UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
ANTHONY WATSON,                         : 09 Civ. 2073 (DAB) (JCF)
                                        :
              Plaintiff,                :        REPORT AND
                                        :        RECOMMENDATION
    - against -                         :
                                        :
PAROLE OFFICER JOHN CIESLAK, JR.,       :
SENIOR PAROLE OFFICER JOHN LOWE,        :
and AREA SUPERVISOR FREDERICK           :
FLOOD,                                  :
              Defendants.               :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE DEBORAH A. BATTS, U.S.D.J.:

     Anthony Watson brings this action pro se pursuant to 42 U.S.C.
§ 1983, alleging violations of his constitutional rights while he
has been subject to parole supervision.   The defendants move to
dismiss certain of the plaintiff's claims under Rule 12(b)(6) of
the Federal Rules of Civil Procedure.   For the reasons that follow,
I recommend that the defendants' motion be granted in part and
denied in part.

Facts

     Mr. Watson is currently on parole.   His claims arise out of
his relationship with several parole officers, including Parole
Officer John Cieslak, Jr., Senior Parole Officer John Lowe, and
Area Supervisor Frederick Flood, who are named as defendants.[1]
Officer Cieslak was assigned to Mr. Watson's case in March 2005, at

---

[1] It appears that Mr. Flood has not yet been served with a
copy of the summons and complaint.  Mr. Watson's claims against him
will therefore not be addressed here.

which time the plaintiff had been on parole for six and one-half years.   (Amend. Compl., ¶ 2A).   Although Mr. Watson's precise claims are at times unclear, they appear to arise out of the following events: (1) Officer Cieslak's handling of Mr. Watson's case, including changing the plaintiff's reporting requirements, failing to place him on "inactive" parole status, failing to provide quarterly evaluations, and, more generally, acting unprofessionally; (2) Officer Cieslak's home visits to the plaintiff's apartment, allegedly conducted in an intrusive manner; (3) two arrests of the plaintiff, one at his place of employment and the other at his home; and (4) denial of an interstate travel pass for the plaintiff to attend a work-related training.   I will discuss the facts surrounding each incident in more detail below.

Discussion

The defendants move to dismiss certain of Mr. Watson's claims on the grounds that (1) the conduct complained of did not violate the plaintiff's constitutional rights; (2) Officer Cieslak is entitled to qualified immunity with respect to some of the claims; (3) the plaintiff has failed to state a claim for malicious prosecution against either defendant; and (4) the plaintiff has failed to show that his right to due process was violated when he was denied "inactive status."   (Defendant Cieslak's Memorandum of Law in Support of his Motion to Dismiss the Amended Complaint in Part ("Cieslak Memo.") at 5; Defendant Lowe's Memorandum of Law in

Support of his Motion to Dismiss the Complaint in Part ("Lowe Memo.") at 4-6; Defendants Cieslak and Lowe's Reply Memorandum of Law in Support of their Motions to Dismiss the Complaint in Part ("Def. Reply") at 2-3).

A. <u>Legal Standard for Dismissal</u>

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (per curiam); <u>Freedom Holdings, Inc. v. Spitzer</u>, 363 F.3d 149, 151 (2d Cir. 2004).  A complaint need not contain detailed factual allegations, but it must present more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action.  <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949-50 (2009) (citing <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007)). Where the complaint's factual allegations permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. <u>Id.</u> at ___, 129 S. Ct. at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

<u>Pro se</u> complaints are held to less stringent standards than those drafted by lawyers. <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>Boykin v. KeyCorp</u>, 521 F.3d 202, 213-14 (2d Cir. 2008) (citing <u>Erickson</u>, 551 U.S. at 94).  In fact, pleadings of a <u>pro se</u>

party should be read "'to raise the strongest arguments that they suggest.'"  Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)).  Even after Iqbal, which imposed heightened pleading standards  in general, pro se complaints are to be liberally construed.  See Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009).  Dismissal of a pro se complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements.  See Rodriquez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997).

On a motion to dismiss, the court is limited to reviewing the allegations in the complaint and documents attached to it or incorporated by reference.  See Gryl v. Shire Pharmaceuticals Group PLC, 298 F.3d 136, 140 (2d Cir. 2002).  The court may also consider documents necessarily relied upon by the plaintiff in drafting the complaint.  Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).

B.  Failure to State a Claim

The defendants first argue that many of the events alleged in Mr. Watson's Amended Complaint are not actionable under § 1983 because they did not amount to a deprivation of his constitutional rights or violate federal law.  (Cieslak Memo. at 4-5; Lowe Memo. at 4-5).  See Palmieri v. Lynch, 392 F.3d 73, 78 (2d Cir. 2004).

1.   <u>Reporting Requirements</u>

Mr. Watson alleges that Officer Cieslak changed his parole reporting requirements from bi-monthly to monthly. (Amend. Compl., ¶ 2A). He then asserts, "This is not being aided, assisted and supervised by a professional parole officer." (Amend. Compl., ¶ 2A). It is unclear whether Mr. Watson intended to state a claim arising out of these events, or whether they merely provide background information for his other claims. In any event, such a claim cannot proceed. To the extent that the plaintiff is asserting a due process claim, he must demonstrate that he has been deprived of a liberty interest, and there is no liberty interest implicated by the frequency of parole supervision.

2.   <u>Home Visits</u>

Mr. Watson next claims that Officer Cieslak's monthly visits to his home were harassing. The plaintiff alleges that Officer Cieslak tried to locate him by showing his photograph to his neighbors, even though Officer Cieslak had his address readily available on file. (Amend. Compl., ¶ 2B). He further alleges that Officer Cieslak made at least one of his monthly home visits between 4:00 and 5:30 a.m. (Amend. Compl., ¶ 2B). If there is a constitutional right underlying these allegations, it is the plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures.

The Fourth Amendment protects individuals against unreasonable

government intrusions into areas where they have a legitimate expectation of privacy. United States v. Hayes, 551 F.3d 138, 143 (2d Cir. 2008). To be found constitutional, a search of a home by a government official generally must be conducted pursuant to a search warrant or based on probable cause. United States v. Karo, 468 U.S. 705, 714-15 (1984). However, the Supreme Court has held that a state's operation of a probation program presents "special needs" justifying departure from the warrant and probable cause requirements. Griffin v. Wisconsin, 483 U.S. 868, 873-74 (1987). In Griffin, the Court found a warrantless search of a probationer's home constitutional because it was conducted pursuant to a valid regulation governing probationers. Id. at 872-73. Later, in United States v. Knights, the Court held that "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity," a search of the probationer's home is constitutional. 534 U.S. 112, 121 (2001). These exceptions to the Fourth Amendment's standard requirement apply to parolees as well as probationers. United States v. Grimes, 225 F.3d 254, 258 (2d Cir. 2000).

In New York, parole agreements contain a provision that allows parole officers to make visits to parolees' residences and places of employment and to conduct searches of their person, residence, and property. United States v. Newton, 369 F.3d 659, 665 (2d Cir. 2004) (citing United States v. Reyes, 283 F.3d 446, 461 (2d Cir.

6

2002); N.Y. Comp. Codes R. & Regs. tit. 9, § 8003.2(d)).  The New York Court of Appeals has read into these parole agreements the requirement that searches of parolees be "rationally and substantially related to the performance of [a parole officer's] duty."  People v. Huntley, 43 N.Y.2d 175, 179, 401 N.Y.S.2d 31, 33 (1977).  The Second Circuit has held that Huntley's "reasonable relationship rule" is "'coextensive with the requirements of the Fourth Amendment.'"  Newton, 369 F.3d at 666 (quoting Grimes, 225 F.3d at 259 n.4).

Recently, in Samson v. California, the Supreme Court set a less stringent standard for searches of parolees when it held that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee."  547 U.S 843, 857 (2006).  This holding, however, seems to be based on dual rationales.  The parolee in Samson had agreed, pursuant to California law, "'to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause.'"  Id. at 846 (quoting Cal. Penal Code Ann. § 3067(a)).  First, the Court noted that the search condition had been clearly explained to petitioner Samson and found that, based on "the totality of the circumstances pertaining to petitioner's status as a parolee . . . including the plain terms of the parole search condition, . . . petitioner did not have an expectation of privacy that society

would recognize as legitimate." Id. at 852.  However, the Court
also stated in broader terms that the numerous conditions imposed
upon parolees "clearly demonstrate that parolees . . . have
severely diminished expectations of privacy by virtue of their
status alone." Id.

Because the Court based its holding at least in part upon the
language of the California parole agreement, which more explicitly
diminishes the parolee's expectation of privacy than does the
equivalent New York agreement, the effect of Samson in this
jurisdiction remains unclear.  The Second Circuit has yet to reach
the question of whether Samson effectively overrules cases that
assessed the constitutionality of parolee searches using the
Huntley standard.  See United States v. Watts, 301 Fed. Appx. 39,
42 n.2 (2d Cir. 2008) (upholding a search as reasonable under
Huntley and thus "sav[ing] for another day" the issue of whether
Samson overrules prior Second Circuit precedent); United States v.
Singleton, 608 F. Supp. 2d 397, 407-08 (W.D.N.Y. 2009)
(acknowledging unsettled question of Samson's effect and finding
that the search in question satisfied Huntley requirements); but
cf. United States v. Massey, 461 F.3d 177, 180 (2d Cir. 2006)
(Miner, J., concurring) ("Th[e] [New York] consent to search is,
for all practical purposes, indistinguishable from the 'waiver'
apparently signed in Samson in the form prescribed by California
law.").

8

Mr. Watson's claim that Officer Cieslak showed his picture to his neighbors does not implicate any Fourth Amendment rights. However, the allegation that Officer Cieslak conducted one or more home visits to Mr. Watson's apartment between 4:00 and 5:30 a.m. does. Until the record is more complete with respect to the reasons for and the nature of these searches, Mr. Watson's Fourth Amendment claims ought not be dismissed.

### 3. Evaluations

Mr. Watson next complains that unlike his previous parole officers, Officer Cieslak did not provide him with quarterly evaluations. (Amend. Compl., ¶ 2C). Such an omission does not rise to the level of a constitutional or federal statutory violation. Additionally, these facts seem to be linked to Mr. Watson's claim that Officer Cieslak incorrectly failed to place him on inactive parole status, a claim that I will address below.

### 4. Unprofessional Conduct

The plaintiff has made general claims regarding Officer Cieslak's allegedly unprofessional conduct. (Amend. Compl., ¶¶ 2A, 2D). Mr. Watson states that Officer Cieslak "abus[ed] his authority by threatening parolee with his power to have parolee lock[ed] up" and spoke to him and his family "with disrespect and arrogance." (Amend. Compl., ¶ 2F). As the defendants note, Officer Cieslak's purported rudeness was no doubt unpleasant, but it does not rise to the level of a violation of the plaintiff's

9

constitutional rights.

     5.  <u>Denial of Travel Pass</u>

Mr. Watson references two attempts to obtain interstate travel passes for job training.  The first incident occurred in March 2008 when he wished to apply for a travel pass but was unable to do so because Officer Cieslak was not in the office at the time of the plaintiff's visit.  (Amend. Compl., ¶ 2D).  Mr. Watson never did obtain a pass but traveled nonetheless.  As a result, a warrant was issued for his arrest, and he was arrested at his place of employment after his return.  (Amend. Compl., ¶ 2D).

The details of the second incident are less clear.  It seems that, in June 2008, Mr. Watson again sought a travel pass for job training out of state.  (Amend. Compl., ¶ 2E).  Before submitting his application to Officer Cieslak, he faxed the relevant paperwork to Senior Parole Officer John Lowe, who allegedly informed him that there should be no reason for Officer Cieslak to deny the pass. (Amend. Compl., ¶ 2E).  Officer Cieslak, however, ultimately did not grant Mr. Watson's application.  (Amend. Compl., ¶ 2E).

If Mr. Watson has articulated a constitutional right in this portion of his Complaint, it is his right to travel.  However, parolees, while not physically incarcerated, are nonetheless serving a portion of their criminal sentence and are therefore effectively still in custody.  <u>Baker v. Welch</u>, No. 03 Civ. 2267, 2003 WL 22901051, at *11 (S.D.N.Y. Dec. 10, 2003) (citing <u>United</u>

States v. Thomas, 729 F.2d 120, 123 (2d Cir. 1984); United States ex. rel. Randazzo v. Follette, 282 F. Supp. 10, 14-15 (S.D.N.Y. 1968)). Further, a person's criminal conduct within a state "necessarily qualifie[s] his right thereafter to travel interstate." Jones v. Harris, 452 U.S. 412, 421 (1981); see also Williams v. Wisconsin, 336 F.3d 576, 581 (7th Cir. 2003) (parolees' right to travel is extinguished for the entire balance of their sentences); Bogley v. Harvey, 718 F.2d 921, 923 (9th Cir. 1983). Thus, it is entirely appropriate that New York parole agreements provide that parolees are not permitted to travel outside the state without permission of their parole officer. N.Y. Comp. Codes R. & Regs. tit. 9, § 8003.2(c). See Kimberlin v. United States Parole Commission, No. 03-5017, 2004 WL 885215, at *1 (D.C. Cir. 2004) (appellant lacks a right to travel abroad in light of regulation leaving such travel in parole commission's discretion). Accordingly, Officer Cieslak's denial of the plaintiff's travel pass did not violate his constitutional rights.

C. Malicious Prosecution

In the plaintiff's affirmation in opposition to Defendant Cieslak's motion to dismiss ("Watson Response to Cieslak"),[2] Mr.

---

[2] Because the defendants submitted separate memoranda in support of their motions to dismiss Mr. Watson's Amended Complaint, Mr. Watson filed two separate responsive affirmations. Both affirmations were entitled "Affirmation of Anthony Watson in Opposition to Defendant's Motion to Dismiss" and appear to have been submitted on the same day.

Watson confirms that he is pursuing a malicious prosecution claim against Officers Cieslak and Lowe. (Watson Response to Cieslak at 1-2). To establish liability for malicious prosecution under New York law, a plaintiff must demonstrate that (1) the defendant initiated a prosecution against the plaintiff, (2) the defendant lacked probable cause to believe the proceeding could succeed, (3) the defendant acted with malice, and (4) the prosecution was terminated in the plaintiff's favor. Posr v. Court Officer Shield No. 207, 180 F.3d 409, 417 (2d Cir. 1999). To qualify for relief under § 1983, the plaintiff must also show that there was "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Rohman v. New York City Transit Authority (NYCTA), 215 F.3d 208, 215 (2d Cir. 2000). Both defendants argue that the first and fourth elements of malicious prosecution have not been met and that Mr. Watson's malicious prosecution claim must therefore be dismissed.

The plaintiff mentions two arrests in his Amended Complaint. In March 2008 he was arrested pursuant to a warrant for violating the terms of his parole by traveling out of state. (Amend. Compl., ¶ 2D). The plaintiff concedes that he did not receive a travel pass for this trip. (Amend. Compl., ¶ 2D). Thus, Officer Cieslak had probable cause to pursue the charges against Mr. Watson. Moreover, it appears that the action was not terminated in Mr. Watson's favor. Therefore, the plaintiff has not made out a claim

for malicious prosecution for this arrest.[3]

The second arrest appears to have occurred in September 2008, when Officers Cieslak, Lowe, Sullivan, and Spero arrived at the plaintiff's home in response to a "community complaint" against him.  (Amend. Compl., ¶ 2E).  The plaintiff alleges that the officers handcuffed him and proceeded to search his apartment, but found no contraband.  (Amend. Compl., ¶ 2E).  Mr. Watson was then questioned about his control over the basement area of his mother-in-law's house next door.  (Amend. Compl., ¶ 2E).  He states that he told the officers he did not have control over the area, but alleges that Officer Cieslak fabricated a statement indicating otherwise and authorized Officers Lowe and Sullivan to search the basement area.  (Amend. Compl., ¶ 2E).  The plaintiff reports that these officers found weapons there and proceeded to file a criminal complaint against him for unlawful possession of firearms.  (Amend. Compl., ¶ 2E).  He also states that as a result of this incident, Officer Cieslak reported that he had violated parole.  (Amend. Compl., ¶ 2E).

In his affirmation in opposition to Defendant Lowe's Motion to Dismiss ("Watson Response to Lowe"), Mr. Watson asserts that the criminal complaint was dismissed on March 26, 2009, but that he remained in custody awaiting a hearing regarding his parole

---

[3] The plaintiff has stated that he is not pursuing a false arrest claim for his March 2008 arrest. (Watson Response to Cieslak at 1).

violation. (Watson Response to Lowe at 1). The parole hearing was held on May 11, 2009 (Watson Response to Lowe at 1), and Mr. Watson seems to assert that it resulted in a finding that false statements made by Officer Cieslak had led to the arrest. ( Watson Response to Cieslak at 1). The parole violation proceedings were thus dismissed, and Mr. Watson was released from Ulster County Jail on June 18, 2009. (Watson Response to Cieslak at 1; Watson Response to Lowe at 1).

The defendants first assert that they did not initiate the prosecution against Mr. Watson. While some cases have held that a prosecutor's independent decision to prosecute breaks the causal chain between an officer's arrest and the prosecution of a criminal defendant, those cases involve situations in which the prosecutor was not deceived or pressured by the arresting officers. See White v. Frank, 855 F.2d 956, 962 (2d Cir. 1988); Bernstein v. City of New York, No. 06 Civ. 895, 2007 WL 1573910, at *6 (S.D.N.Y. May 24, 2007). Mr. Watson, however, alleges that the arresting officers misled the prosecutors by fabricating incriminating statements in order to secure his arrest. The plaintiff has therefore adequately alleged that Officer Cieslak and Officer Lowe initiated the prosecution against him.

The defendants next assert that the plaintiff has not indicated that the action against him terminated in his favor. They first complain that Mr. Watson has only "summarily state[d]"

14

that the criminal proceedings were dismissed and that he has failed to allege that the dismissal demonstrated his innocence. (Def. Reply at 4). Where a criminal prosecution does not result in acquittal, termination of the action is deemed to have been in the plaintiff's favor only if the final disposition is one that indicates his innocence. <u>Fulton v. Robinson</u>, 289 F.3d 188, 196 (2d Cir. 2002); <u>Murphy v. Lynn</u>, 118 F.3d 938, 948 (2d Cir. 1997). Whether the termination indicates innocence depends on its nature and circumstances; the critical inquiry is whether the failure to proceed implies a lack of reasonable grounds for the prosecution. Here, having applied the generous reading afforded <u>pro se</u> pleadings, I find that Mr. Watson alleges that a hearing resulted in a determination that Officer Cieslak did indeed fabricate the statements that led to the arrest. (Watson Response to Cieslak at 1). This is far more than a conclusory allegation of favorable termination and is sufficient to support a malicious prosecution claim.

The defendants also argue that Mr. Watson has made conflicting statements about when the charges against him were dropped. (Def. Reply at 5). They note that the plaintiff's affirmation in response to Officer Lowe states that the criminal proceedings were dismissed against him on March 26, 2009 but that his Amended Complaint alleges that he was still incarcerated on April 20, 2009. These statements, however, are not necessarily in conflict, as it

seems that Mr. Watson's criminal charges were dropped in March 2009
but that he continued to be held in jail pending a hearing on his
parole violation.

     D.   <u>Due Process</u>

     The plaintiff has clarified that he is asserting a due process
claim with respect to his "status." (Watson Response to Lowe at 1).
The defendants interpret this as a complaint about their refusal
to place the plaintiff on inactive parole status, which essentially
eliminates the requirement of regular contact between a parolee and
his supervising parole officer.   (Def. Reply at 3 n.3 (citing
<u>Matter of Gilkes v. New York State Division of Parole</u>, 192 A.D.2d
1041, 1042, 597 N.Y.S.2d 224, 225 (3d Dep't  1993)).   However, a
parolee has no constitutional right to be placed on inactive
status.   Thus, Mr. Watson has failed to state a due process claim.

     E.   <u>New Claims</u>

     Finally, the defendants contend that Mr. Watson seems to be
seeking to amend his complaint through allegations in his
opposition papers that Officers Cieslak and Lowe failed to lift a
parole warrant, thus unnecessarily prolonging his time in jail.
(Def. Reply at 4 (citing Watson Response to Lowe at 1)).   The
defendants are correct that the plaintiff cannot use his opposition
papers as a vehicle for amending his claims.   <u>Connolly v. Havens</u>,
763 F. Supp. 6, 8 n.2 (S.D.N.Y. 1991) (citing <u>O'Brien v. National
Property Analysts</u>, 719 F. Supp. 222, 229 (S.D.N.Y. 1989)).

Accordingly, this new claim need not be addressed until the plaintiff properly submits an amended pleading.

Conclusion

For the reasons set forth above, I recommend that the defendants' motions to dismiss be denied with respect to Mr. Watson's malicious prosecution claims against both defendants relating to his September 2008 arrest, his Fourth Amendment claims regarding Officer Cieslak's early morning home visits, and the false arrest claim relating to the September 2008 arrest.[4]  As to Mr. Watson's other claims, the defendants' motion should be granted.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedural, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Deborah A. Batts, U.S.D.J., Room 2510, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude appellate review.

---

[4] The defendants did not move to dismiss this last claim. (Cieslak Memo. at 1 n.2; Lowe Memo. at 1 n. 2).

Respectfully submitted,

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:     New York, New York
           December 3, 2009

Copies mailed this date:

Anthony Watson
248 Smith Avenue, Apt. #1
Kingston, New York 12401

Thomas M. Biesty, Esq.
Assistant Attorney General
120 Broadway
New York, NY 10271

18